UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN ENGELHARDT and RITA ENGELHARDT, | § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-12-3655 |
| | § | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION and CHASE BANK USA, N.A. et al., | § § § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

Plaintiffs Steven and Rita Engelhardt have filed a lawsuit against Defendants JPMorgan Chase Bank, National Association and Chase Bank, USA, N.A. ("Defendants"). The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (Dkt. 20). Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Original Complaint. (Dkt. 21) The Engelhardts have filed a Response to this Motion to Dismiss (Dkt. 27), and a hearing has been held. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **GRANTS** the Defendants' Motion to Dismiss.

### I. BACKGROUND

In November 2012, the Engelhardts were the holders of several credit cards issued by Chase. The Engelhardts used one of those, a MasterCard, while vacationing in Mexico to purchase an interest in timeshare real estate. These timeshares were offered by a Mexican corporation, The Grand Mayan Resorts. The Engelhardts' petition allege that

they "charged $8,363.00 on their credit card with Chase" as a deposit for the timeshare. However, the Engelhardts at some point became dissatisfied with their purchase—they allege that The Grand Mayan "committed fraud and fraud in the inducement . . . and then breached the [purchase] Contract before it could be cancelled." The Engelhardts' petition alleges that they were among a number of people who used Chase credit cards to purchase these timeshares from The Grand Mayan Resort. They allege that Chase benefitted from their timeshare purchase by receiving a fee,[1] that Chase was aware at the time of their transaction that other Chase cardmembers were unhappy with their timeshare purchase, and that Chase was "aware of The Grand Mayan's improper and wrongful business practices."

The Engelhardts' petition next alleges that, after they returned from their vacation, they attempted to rescind their purchase of the timeshare and they alerted Chase "of the problems, misrepresentations, fraud and breach of contract by The Grand Mayan." They asked that Chase "backcharge" the $8,363.00 charge to their MasterCard. The Engelhardts allege that Chase responded by sending them a letter stating that "[Chase] will pursue all options available to us to assist you in a favorable outcome" and representing that it would "research" the dispute.

The Engelhardts allege that Chase sent an e-mail to The Grand Mayan but did nothing more. Instead, Chase continued to apply the charge to their credit card bill. The Engelhardts refused to make payments on the account, leading Chase to add interest to

---

[1] "Chase gets paid a premium on each charge made by any customer who uses their Chase VISA or MasterCard to make a downpayment or payment on a Grand Mayan Timeshare." First Amended Original Complaint, ¶ VI.4. (Dkt. 12) and Affidavit of Steven Engelhardt (Dkt.27-2).

2

the charges and eventually make a negative report on the account to the credit reporting agencies. The Engelhardts complain that this negative report has resulted in their inability to refinance their house and receive loans at "reasonable credit fees."

The Engelhardts allege that their contract with Chase promised that Chase would conduct a "reasonable investigation" into any disputed charges. They therefore brought a lawsuit in state court against Defendants. Defendants removed the case to federal court and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 4). The Engelhardts then filed an amended complaint. (Dkt. 11). The Engelhardts' current amended complaint asserts causes of action for breach of contract, gross negligence, negligence and violations of the Texas Deceptive Trade Practices Act ("DTPA"). (Dkt. 12). They seek actual damages of $8,363.00, plus compensatory damages of $250,000, damages for mental anguish in the amount of $50,000, treble damages under the DTPA, punitive damages and attorneys' fees. Defendants' second motion to dismiss—the Motion before this Court—argues that the Engelhardts' amended complaint still fails to state a claim and that dismissal is required by Federal Rule of Civil Procedure 12(b)(6). Along with their Response to the Motion to Dismiss, the Engelhardts have submitted an affidavit from Steven Engelhardt that swears to many of the facts alleged in their First Amended Original Petition.

## II.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy this requirement, the statement must provide the defendant with "fair

notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (internal citations omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 416, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (the elements of the plaintiff's claims "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant"). If a complaint fails to satisfy this requirement, it may be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) by a motion urging that the claim fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion for dismissal for failure to state a claim, a complaint "must contain . . . a short and plain statement . . . showing that the pleader is entitled to the relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." FED. R. CIV. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009).

In conducting this analysis, the complaint should be read in the light most favorable to the nonmoving party, and all factual allegations in the complaint must be taken as true. *Bell Atl. v. Twombly*, 550 U.S. 544, 554–55, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Hughes v. Tobacco Inst.*, 278 F.3d 417, 420 (5th Cir. 2001). However, the Court is not required to accept conclusory legal allegations cast in the form of factual allegations if they cannot be reasonably drawn from the facts alleged. *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a "complaint must contain sufficient factual matter, taken as true, to state a claim for relief that is plausible on its face." *Id.*; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). A complaint "must contain either direct or inferential allegations respecting all the material

elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. Further, a "complaint must allege more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007).

The factual allegations within a complaint, whether direct or inferred, must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To meet the appropriate standard of plausibility there must be enough facts within a complaint "to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 Fed. App'x 446, 469 (5th Cir. 2009). This evaluation is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. When reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citations omitted).

### III. ANALYSIS

Defendants first allege that the Engelhardts' negligence and gross negligence claims should be dismissed because they are barred by the economic loss rule and because the Engelhardts' complaint failed to identify any duty Defendants owed to them. Next, Defendants argue that the Engelhardts' breach of contract claim is deficient because it does not identify the provision of the contract that Defendants are alleged to

have breached. Finally, Defendants argue that the Engelhardts' DTPA claim should be dismissed because the Engelhardts are not consumers under the DTPA, and because they failed to specifically identify which of Defendants' actions are alleged to have violated the DTPA.

### 1. *The Economic Loss Rule.*

The Court first turns to the Defendants' contention that the Engelhardts' negligence and gross negligence claims should be dismissed because they are barred by the economic loss rule. Under Texas law, the "economic loss" rule provides that "[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). The Texas Supreme Court recently cautioned, however, "[W]e have applied the economic loss rule only in cases involving defective products or failure to perform a contract." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415, 418 (Tex. 2011). Thus, a party to a contract who files a lawsuit seeking economic damages for a tort is not necessarily barred from bringing that claim. *Id.* at 418–19 (even when a contract exists, economic losses may be still recovered for claims of "negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action") (citations omitted).

To determine whether the economic loss rule bars a tort claim, courts must consider "both the source of the defendant's duty to act (whether it arose solely out of the

contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12 (Tex. 1996)). At oral argument, the Engelhardts could not point to any legal authority that created a duty owed to them by Chase, other than the cardmember agreement.[2] The Court therefore concludes that the economic loss rule bars the Engelhardts' claims for negligence and gross negligence because the only source of Defendants' alleged duties to the Engelhardts is the cardmember agreement between the Engelhardts and Chase. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the Engelhardts' claims for negligence and gross negligence pursuant to Federal Rule 12(b)(6).

### 2. *The Engelhardts' Claim for Breach of Contract.*

Defendants further argue that the Engelhardts' claims for breach of contract should also be dismissed. Defendants complain that the Engelhardts' pleading regarding the alleged breaches is too general to withstand scrutiny. The Engelhardts failed to attach a copy of their Cardmember Agreement to their pleadings. Defendants have instead attached the relevant Agreement, and contend that a review of that agreement in light of the alleged facts shows that the Engelhardts cannot plead a claim for breach of the agreement under these facts.

Although the Court should not normally go outside the pleadings in considering a motion to dismiss, an exception to this rule is allowed where a plaintiff sues on a contract

---

[2] At the hearing, Steven Engelhardt appeared as counsel for himself and for his wife. Mr. Engelhardt is a licensed attorney in the State of Texas and is listed among the counsel in this case.

but fails to attach the contract and the Defendant then supplies the relevant contract in its motion to dismiss. *See, e.g., In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation*, 834 F.Supp.2d 566, 577 (S.D. Tex. 2011). The Engelhardts raised no objection to the Cardmember Agreement attached to Defendants' pleadings. At the hearing on the Motion to Dismiss, Steven Engelhardt alluded to a letter he received from Chase as somehow becoming a binding contract between the Engelhardts and Chase, but the pleadings that were actually filed by the Engelhardts make it clear that their breach of contract claims are based upon the Cardmember Agreement alone.[3]

The essential elements of a breach of contract claim include: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; (4) damages sustained as a result of the breach." *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The agreement attached to Defendants' Motion to Dismiss contains two provisions relevant to this dispute. The first provision is entitled "What to Do if You Find a Mistake on Your Statement," and instructs cardmembers on what to do "if you think there is an error on your statement."[4] It allows a cardmember to notify Defendants that the cardmember believes that Defendants have made an alleged error on

---

[3] For example, paragraph VI.9 states, "In the cardholder's agreement Chase promised upon receipt of Engelhardt's documentation 'to investigate' Engelhardt's request." First Amended Original Complaint, ¶ VI.9. (Dkt. 12). Similarly, the affidavit of Steven Engelhardt states "The contract clause in the cardmember agreement described in Plaintiffs' First Amended Original Complaint establishes Chase's obligation to 'investigate' our request for the backcharge." (Dkt.27-2, ¶ 8, 10). Although Mr. Engelhardt sought to imply that perhaps some other documents created a binding contract between himself and Chase, the Engelhardts have had two opportunities actually plead that contention and, and have failed to do so.

[4] Cardmember Agreement, Dkt. 21-2, pg. 5.

the credit card statement, sending written notice explaining "what you believe is wrong and why you believe it is a mistake."[5] This is the provision upon which the Engelhardts base their claim for breach of contract, alleging that they alerted Defendants of their dispute with The Grand Mayan Resort and complaining that Defendants did not properly investigate their claim. However, even a cursory review of the Engelhardts' pleadings reveals that this "error on your bill" provision does not govern this case. The Engelhardts' pleadings repeatedly admit that they did buy the timeshare interest at issue, and that the $8,363.00 charge was authorized by them. Thus, the Engelhardts do not allege that Defendants made a mistake or error in the account statement. Instead, the Engelhardts' pleadings only complain that they purchased the interest in the timeshares but then became unhappy with their purchase and wanted their money back.

Accordingly, it is the second provision in the Cardmember Agreement that actually governs the factual scenario described by the Engelhardts in their pleadings. This second provision—entitled "Your Rights if You are Dissatisfied with Your Credit Card Purchases"—informs cardmembers that particular procedures are to be followed if they make a purchase with their card and later become dissatisfied with that transaction. It states, "If you are dissatisfied with the goods or services that you have purchases with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase." However, this provision contains a limitation that contested purchases "must have been made in your home state or within 100 miles of your current mailing address." The

---

[5] *Id.*

Engelhardts plead that they are residents of Harris County, Texas, and that their purchase from The Grand Mayan Resorts occurred in Nuevo Vallarta, Mexico. The Court takes judicial notice of the fact that the purchase location of Nuevo Vallarta is neither in Texas nor is it 100 miles from Harris County. Accordingly, under the plain terms of the contract upon which they sue, the Engelhardts have failed to state a claim upon which relief can be granted.

Where the plain terms of a contract show that plaintiffs cannot support their cause of action, dismissal pursuant to Rule 12(b)(6) is appropriate. *See, e.g., Mae v. U.S. Property Solutions, L.L.C.*, No. H-08-3588, 2009 WL 1172711, 2 (S.D. Tex. 2009) (dismissing claim for breach of contract under Rule 12(b)(6) where plaintiffs failed to plead which provision of contract had been breached, and court's review of contract revealed that claim for breach was not viable). Accordingly, the Court hereby **GRANTS** the Defendants' Motion to Dismiss the Engelhardts' claims for breach of contract.

    3.   *The Engelhardts' Claim for Violations of the DTPA.*

The Court next turns to the Engelhardts' claims for violations of the DTPA. Defendants argue that the DTPA claims must be dismissed because the Engelhardts are not "consumers" who may recover under the DTPA.

To recover under the DTPA, a claimant must establish that: (1) he was a consumer of the defendant's goods and services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the consumer. *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 163 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Whether a

plaintiff is a consumer under the DTPA is a question of law for the court to decide. *Rivera v. South Green Ltd. P'ship*, 208 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A consumer is an individual who seeks or acquires goods or services by purchase or lease. *Id.* When the transaction at issue is merely a loan of money, a plaintiff cannot establish consumer status and the DTPA does not apply. *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980). If, however, the loan is made for the acquisition of a good or service, consumer status may be established. *See, e.g., Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 708 (Tex. 1983) (DTPA applied to financing for purchase of a house because purchaser "did not seek to borrow money; they sought to acquire a house."); *Brown v. Bank of Galveston*, 930 S.W.2d 140, 143 (Tex. App.–Houston [14 Dist.] 1996) ("[W]here the extension of credit is incident to the sale of goods or services and the conduct of the party extending the credit is intertwined in the transaction, the borrower may be a consumer with respect to the creditor, as well as to the seller, of the goods."). On the other hand, "a bank's incidental acts in administering a loan do not constitute an independent objective that takes the transaction out of *Riverside's* denial of DTPA liability." *McCaig v. Wells Fargo Bank (Texas), N.A.*, No. C-11-351, 2012 WL 3598256, 4 (S.D. Tex Aug. 20, 2012).

The Engelhardts argue that their contract with Chase contained a promise by Chase to conduct a "reasonable investigation" into any disputed charges. Accordingly, they contend that their contract with Chase was for more than a mere loan of money and they are consumers under the DTPA. The Court disagrees. First, as discussed above, the Engelhardts' contention that Chase breached a contractual duty to investigate their

dispute with The Grand Mayan is not supported by the plain language of the Cardmember Agreement. Further, any duty that Chase may have had was incidental to the main purpose of the Cardmember Agreement–an extension of credit for general purchases. *See, e.g., McCaig* at *4. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the Engelhardts' DTPA claim.

## CONCLUSION

The Engelhardts have had ample opportunity to plead their causes of action against Defendants. A review of the Defendants' Motion to Dismiss shows that that the Engelhardts' pleadings fail to state a claim upon which relief may be granted and Defendants' Motion to Dismiss should be **GRANTED**. Accordingly, the Court hereby **GRANTS** Defendants' Motion and **DISMISSES** the Plaintiffs' claims in this case.

**SIGNED** at Houston, Texas on April **23**, 2013.

GEORGE C. HANKS, JR.
UNITED STATES MAGISTRATE JUDGE